Mark E. Williams, Esq.
**THE LAW OFFICES OF MARK E. WILLIAMS, P.C.**
Suite 102, BankPacific Building
166 West Marine Corps Drive
Dededo, Guam 96929
Telephone: (671) 637-9620/ 1
Facsimile: (671) 637-9660

Attorneys for Plaintiff,
*Robert E. Westermann, Jr.*

IN THE DISTRICT COURT OF GUAM
TERRITORY OF GUAM

| | |
|---|---|
| ROBERT E. WESTERMANN, Jr.,<br><br>Plaintiff,<br><br>v.<br><br>DZSP 21, a Limited Liability Corporation,<br><br>Defendant. | Case No.:<br><br>**VERIFIED COMPLAINT FOR DAMAGES FOR DISCRIMINATION; (Three Counts)**<br><br>**WRONGFUL DISCHARGE;**<br><br>**NEGLIGENCE;**<br><br>**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**BREACH OF CONTRACT;**<br><br>**JURY REOUEST** |

**TO THIS COURT, ALL PARTIES HEREIN AND ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that Plaintiff Robert E. Westermann, Jr. (hereinafter "Plaintiff"), by and through his undersigned counsel, files this Complaint and Jury Demand against Defendant DZSP 21, LLC (hereinafter "Defendant" or "Company"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

## INTRODUCTION

1. This civil action challenges Defendant's unlawful disability discrimination with

respect to its termination of Plaintiff. After working 2.9 hours on May 15, 2019, Plaintiff informed Company Office Manager Ms. Suzette Gutierrez (hereinafter "Ms. Gutierrez") that he was taking the rest of the day off because he was not feeling well. Sometime after Plaintiff left work, his health declined to the point where he was sent by ambulance to Guam Memorial Hospital, and later admitted. Plaintiff was discharged from the hospital sometime between on Sunday, May 19, 2019.

2. On May 20, 2019, Plaintiff returned to work. Shortly after he entered his office, Defendant's Chief Executive Officer, Mr. Wayne L. Cornell, (hereinafter "CORNELL") walked into Plaintiff's office and stated that Plaintiff had "become a medical liability to his company", and that Plaintiff "had to go".

3. On June 6, 2019, Plaintiff received an email from CORNELL informing him that he was being terminated, and June 7, 2019 was his last day of work.

4. The action of Defendant's CEO, CORNELL, in terminating the Plaintiff was in violation of the Title 1 of The Americans With Disabilities Act (hereinafter, "ADA"), 42 U.S.C. §12102, since CORNELL was aware of Plaintiff's known disability and specifically chose to terminate Plaintiff's employment at DZSP 21, LLC based on his known disability.

5. Defendant's termination of Plaintiff was also in violation of Section 503 under the federal Rehabilitation Act (hereinafter, "Section 503"), 29 U.S.C. §701, since Defendant, as a federal government contractor chose to discriminate against Plaintiff and terminate his employment at DZSP 21, LLC because of his disability.

6. In sum, Plaintiff was terminated by CORNELL on the grounds of his protected disability without proper due process, placing Defendant in violation of Federal law, Plaintiff's employment contract, the implied covenant of good faith and fair dealing, and the past practice and procedures of the Defendant, for both the Plaintiff and for all other similarly situated employees.

**PARTIES**

7. Plaintiff Robert E. Westermann, Jr. is a resident of Washington State who held the position of Operation Manager at Defendant Company from October 2, 2018 to June 7, 2019. At all times during Plaintiff's employment at the Defendant Company, Company was aware of Plaintiff's

medical disability.

8. Defendant DZSP 21, is a limited liability company incorporated in Delaware specifically, for the purpose of performing Base Operations Support service contracts. As a federal government defense contractor, Defendant is headquartered at Naval Base Guam to provide products and services to all branches of the military at nine locations in Guam[1]. At all relevant times, Defendant has done business within this District and has been an employer engaged in an industry affecting commerce. Upon information and belief, Defendant has employed at least 525 employees, including Plaintiff, and has done so throughout Plaintiff's employment.

## JURISDICTION AND VENUE

9. Because this case is brought under Title I of the ADA, 42 U.S.C. §12102, and Section 503 of the Rehabilitation Act, 29 U.S.C. §701, this Court has federal question jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. § 1343.

10. Furthermore, this Court has supplemental jurisdiction under 28 U.S.C. §1367, for all other claims in this case that are so related to the ADA and Rehabilitation Act violations that such other claims form part of the same case or controversy.

11. Venue is proper in this judicial District because Defendant's unlawful acts of employment discrimination described herein occurred in Guam. *See* 28 U.S.C. §1391(b)(2). Venue is also proper in this judicial District because Defendant has registered and maintains its principal place of business in Santa Rita, Guam. *See* 42 U.S.C. §2000e-5(f)(3).

## FACTS

### Hiring of Plaintiff by DZSP 21

12. Before Plaintiff was hired with Defendant Company, he already had a 20-year work

---

[1] The nine locations in Guam are: Naval Base Guam Apra Harbor, Naval Base Munitions Site, Naval Hospital, Naval Base Computer and Telecommunications Site, Naval Base Radio Barrigada, Joint Region Marianas Nimitz Hill, Santa Rita Navy Complex, the Guam Guard Complex, and Andersen Air Force Base.

relationship with CORNELL. Plaintiff first worked with CORNELL in 1998 on the U.S. Army's Base Operations Support Services Contract at the Reagan Test Center on Kwajalein island. Plaintiff continued to work for CORNELL after CORNELL became the President and Chief Executive Officer of DZSP 21 LLC, in 2007.

13. As Project Director of Defendant's Navy Base Operations Support Contract on the island of Guam, CORNELL found a need to hire someone to consult and analyze the Company's asset management processes. Due to his prior work relationship with Plaintiff, CORNELL solicited and bought the Plaintiff to Guam to fill this position. Since CORNELL found Plaintiff to be a "key member of [his] staff", CORNELL did not hesitate to offer Plaintiff a position at Defendant Company as Operations Manager on September 21, 2018. A copy of Plaintiff's *Employee Offer Letter, dated September 21, 2018*, is attached and identified hereto as Exhibit A, and incorporated herein by reference.

14. On October 2, 2018, Plaintiff was officially hired by Company as its Operations Manager. During the hiring process, Plaintiff informed Company of his disability by checking the "disabled" box on the second page of Company's *New Hire Data Form*, attached hereto as Exhibit B. Plaintiff also signed and dated the Company's *Self-Identification Form*, attached hereto as Exhibit C, which allows Plaintiff to "self-identify as a person with a disability", in accordance with Sections 503 and 504 of the Rehabilitation Act of 1973. Exhibits B and C are attached hereto and incorporated herein by reference.

**Mr. Westermann's Overall Stellar Performance**

15. Not only did CORNELL, on behalf of the Defendant, offer the Operations Manager position to Plaintiff, Mr. Cornell also gave Plaintiff a glowing recommendation on November 22, 2018. *See* attached *Letter of Endorsement of Mr. Westermann, dated 22 November 2018*, as Exhibit D. According to CORNELL'S recommendation, Plaintiff was consistently a stellar performer, manager and leader. CORNELL also stated that Plaintiff's experience and professionalism was invaluable, as it pertains to dealing with and resolving difficult situations for the Defendant. *See* Exhibit D, attached and incorporated herein by reference.

16. Plaintiff's overall stellar work performance was further evidenced by both of his

employee probationary evaluations. On his first evaluation, dated November 14, 2018, Plaintiff's performance was rated as either: "far exceeds"; "exceeds"; or "meets and sometimes exceeds", which was not considered as marginal performance. CORNELL gave Plaintiff those stellar ratings, despite CORNELL's awareness of Plaintiff's health issues reflected in CORNELL's comments. Subsequent to and following this evaluation, and as recommended by CORNELL, Plaintiff continued working at Company for the remainder of his 90-day probationary period, and was further given an additional salary increase which went into effect on December 17, 2018. See "*45-day Employee Probationary Evaluation Review"* attached hereto as Exhibit E and incorporated herein by reference.

17. On January 8, 2019, Plaintiff received another employee evaluation. On this evaluation, CORNELL commented that there were no areas needed for Plaintiff to improve on, and that "Mr. Westermann has made improvements in areas discussed 11/14/2018, and I have great expectations for Mr. Westermann." *See* Company's *90-day Employee Probationary Evaluation Review*, attached hereto as Exhibit F and incorporated herein by reference. As recommended by CORNELL, Plaintiff continued to work for Company, and successfully completed his 90- day probationary period.

**Defendant's Discriminatory Termination of Mr. Westermann**

18. On May 10, 2019, Plaintiff was involved in an automobile accident, by which he was rear-ended by another vehicle. This accident resulted in significant trauma to Plaintiff, which caused him to be admitted in Guam Memorial Hospital (hereinafter "GMH"). After Plaintiff's discharge from GMH on Monday, May 13, 2019, Plaintiff returned to work on Tuesday, May 14, 2019.

19. On Wednesday, May 15, 2019 and after working 2.9 hours, Plaintiff informed Company Office Manager, Ms. Gutierrez, that he was taking the rest of the day off because he was not feeling well. When Plaintiff left work, he went to United's Health Center to receive medical attention. Sometime during this doctor's visit, Plaintiff's health declined further causing him to be taken back to GMH by ambulance, where he was later admitted. Prior to Plaintiff leaving the

doctor's office, he instructed a United's Health Center staff member to call Tim Blackwell[2] and inform him of Plaintiff's situation, since Plaintiff was in poor condition.

20. Plaintiff remained hospitalized at GMH until Sunday, May 19, 2019. After his discharge, he returned to work on Monday, May 20, 2019. Upon his return, Plaintiff was informed by CORNELL that he had "become a medical liability to his company", and that Plaintiff "had to go". Later in that week, CORNELL sent Plaintiff an email notifying him that his last day of work was on June 7, 2019. On June 6, 2019, Plaintiff was given official notice of termination. *See Notice of Termination, dated June 6, 2019*, attached hereto as Exhibit G and incorporated herein by reference.

21. The reason CORNELL gave, on behalf of Defendant Company, for terminating Plaintiff's employment is because of "recent no show, no call" situation and other performance concerns we have previously discussed at various and numerous times." See *id,* Exhibit G. Although no discussions or concerns about performance were identified by CORNELL during the period of time from Plaintiff's November 14, 2018 employee evaluation until the date of Plaintiff's termination.

22. Defendant's company attendance policy, HRO-P-0018 states (in relevant part) that "Employees who are absent from work for three consecutive days without giving proper notice to DZSP 21 will be considered as having voluntarily terminated their employment with DZSP 21." A copy of page 2 of 4 of *Attendance Policy, HRO-P-0018* is attached hereto as Exhibit H. However, Plaintiff was not absent from work for three consecutive days, for he did work on Wednesday, May 15, 2019. He was only absent, due to being in GMH on May 16th and 17th, 2019, for which notice was provided to management.

23. Upon information and belief, Defendant's actual reason for terminating Plaintiff's employment at Company was based on his frequent admissions into GMH, since CORNELL expressly stated to Plaintiff that he was a "medical liability for [Mr. Cornell]'s company", before Plaintiff was given notice of termination.

---

[2] Tim Blackwell is the Company's Annex 1700 Transportation Project Manager.

24. Despite the fact that Defendant's disciplinary policy includes a progressive discipline procedure for its management employees, Plaintiff was never given the opportunity to benefit from such a progressive procedure. A copy of page 6 of 9 of *Disciplinary Policy, HRO-P-0001* is attached hereto as Exhibit I. Instead, CORNELL simply terminated the Plaintiff.

**DZSP 21 was Fully Aware of Mr. Westermann's Medical Disability**

25. Aside from what Plaintiff marked and signed during his hiring process, as plead herein, Defendant was made aware of Plaintiff's medical issues well before he was hired. In fact, when Plaintiff worked with CORNELL before he was hired at DZSP 21, and CORNELL was aware of Plaintiff's medical disability. In response to this knowledge, CORNELL requested that Ms. Gutierrez make a copy of Plaintiff's Part A Medicare card, and Plaintiff's Social Security Notice of Disability, dated July 29, 2014. A copy of Plaintiff's *Social Security Notice of Disability* is attached hereto as Exhibit J, and incorporated herein by reference.

26. On June 12, 2018, CORNELL received an email from Mike Loose (hereinafter, "Mr. Loose") in regard to Mr. Westermann. In the email, Mr. Loose explained that Plaintiff's employment with Diego Garcia LLC had ended due to the insufficient medical facilities and services on Diego Garcia to handle Plaintiff's health condition. Mr. Loose also stated that Diego Garcia's Senior Medical Staff had "diagnosed Plaintiff with a blood clot in his lungs". A copy of the *Mike Loose Letter* is attached hereto as Exhibit K, and incorporated herein by reference.

27. CORNELL was also made aware of Plaintiff's meeting with the Portland Social Security Administration during the dates of March 18, 2019 through March 22, 2019, to discuss his disability. Plaintiff took 44 hours of paid time off (PTO), which required CORNELL'S approval. Furthermore, Mr. Cornell had no problem with allowing Plaintiff to return to Portland to take care of that situation.

**Mr. Westermann's EEOC Proceedings**

28. On November 29, 2019, Mr. Westermann filed a charge of disability discrimination with the United States Equal Employment Opportunity Commission's (hereinafter, "EEOC") Honolulu, HI local office. The Charge number given to Plaintiff was 486-2020-00121; and the Charge alleged in summary, that Mr. Westermann's termination from DZSP 21, LLC was on the

basis of his medical disability, in violation of the ADA. A true and correct copy of the EEOC Charge is attached hereto as Exhibit L.

29. On December 9, 2019, the EEOC transferred Plaintiff's Charge to the Mediation Division. Due to Plaintiff's relocation to Washington for work, he was unable to attend this mediation.

30. On April 8, 2020, the EEOC transferred Plaintiff's Charge to the Investigation Division, and on June 4, 2020, it assigned an investigator to the case.

31. On August 13, 2020, the EEOC found it was unable to determine reasonable cause, but issued the necessary Notice of Right to Sue in this matter.

**DISCRIMINATION**
**(First Count)**
**Disability Discrimination in Violation of Americans with Disabilities Act, 42 U.S.C. §12102**

32. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

33. Title I of the ADA prohibits discrimination on the basis of disability in employment, and requires that employers make reasonable accommodations to the known physical or mental limitations of otherwise qualified individuals with disabilities, unless it results in undue hardship.

34. Plaintiff, as an employee of Defendant was and is an individual with a disability as defined by the ADA. Plaintiff has a physical impairment that substantially limits his ability to sleep. Furthermore, Plaintiff has a documented history of his disability as described in the foregoing paragraphs.

35. Upon information and belief, Defendant, as employer of Plaintiff has at least 525 employees.

36. Defendant engaged in unlawful employment discrimination which violated the ADA, when it terminated Plaintiff's employment because of his documented disability. CORNELL's statement that Plaintiff was a "medical liability", forms the basis for Plaintiff's position that it was his disability which provided the unlawful motive for Defendant's action in terminating his

employment.

37. By not offering progressive discipline measures to Plaintiff, Defendant failed to make reasonable accommodations to Plaintiff's known physical disability.

38. As a direct and proximate result of Defendant's foregoing unlawful employment discrimination, Plaintiff was wrongfully terminated and damaged in the loss of present and future compensation and deprived of equal employment opportunities for experience and training to further qualify for future career advancement.

**DISCRIMINATION**
**(Second Count)**
**Disability Discrimination in Violation of Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 701**

39. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

40. The Rehabilitation Act of 1973 prohibits discrimination on the basis of disability in the employment practices of Federal contractors. Also, Section 503 further prohibits employment discrimination by Federal government contractors with contracts of more than $10,000.00

41. As stated in the foregoing paragraphs, Plaintiff is an individual with a disability as defined by the ADA. Plaintiff has a physical impairment that substantially limits his ability to sleep.

42. Defendant is a federal defense contractor that performs Base Operations Support services to all branches of the military. And as set forth in the foregoing paragraphs, it is upon information and belief that Defendant has at least 525 employees.

43. Upon information and belief, Defendant has federal government contracts that equal approximately, $95.08 million.

44. Defendant engaged in unlawful employment discrimination in violation of Federal law when it terminated Plaintiff's employment because of his documented disability. CORNELL's statement that Plaintiff was a "medical liability" informs Plaintiff's position and belief, that his

disability was Defendant's motive for terminating his employment.

45. By not offering progressive discipline measures to Plaintiff, Defendant failed to make reasonable accommodations to Plaintiff's known physical disability.

46. As a direct and proximate result of Defendant's foregoing unlawful employment discrimination, Plaintiff was wrongfully terminated and damaged in the loss of present and future compensation and deprived of equal employment opportunities for experience and training to further qualify for future career advancement.

**DISCRIMINATION**
**(Third Count)**
**Disability Discrimination under 22 G.C.A. § 5203**

47. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

48. The anti-disability discrimination statute makes it "unlawful employment practice or unlawful discrimination for employer to discharge from employment, any qualified individual because of his disability."

49. Defendant violated 22 G.C.A. § 5203 when it terminated Plaintiff's employment at DZSP 21, for no other motive than his disability; for Plaintiff's glowing recommendations and employee evaluations, as set forth in the foregoing paragraphs, clearly show that Plaintiff was more than well-qualified for his position as Operations Manager.

50. As a direct and proximate result of Defendant's foregoing unlawful employment discrimination, Plaintiff was wrongfully terminated and damaged in the loss of present and future compensation and deprived of equal employment opportunities for experience and training to further qualify for future career advancement.

**Wrongful Discharge under Guam Law**

51. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

52. The public policy exception to any assertion of an "At Will" Doctrine, allows the

Plaintiff to prosecute this claim of wrongful discharge. *See* Edgar Ramos v. Docomo Pacific, Inc. 2012 Guam 20 (Guam, 2012).

53. Title 22 Guam Code Annotated § 5203 provides the public policy which prohibits "unlawful employment practice or unlawful discrimination" by an employer who discharges from employment any qualified individual because of a disability.

54. The Defendant engaged in unlawful disability discrimination when it terminated Plaintiff's employment expressly because of his documented disability. Mr. Cornell's statement that Plaintiff was a "medical liability" informs Plaintiff's belief that Plaintiff's disability was Defendant's motive for terminating his employment.

55. Allowing Defendant to continue with its unlawful disability discrimination would allow the action by the Defendant which is prohibited under the above statute and in violation of public policy to continue.

56. Defendant's reason for terminating Plaintiff is unfounded and pretextual, because Plaintiff was not absent from work for a week; nor was there any other previous concerns identified by Defendant to Plaintiff regarding job performance or attendance. In fact, Plaintiff's glowing recommendations and employee evaluations, as set forth in the foregoing paragraphs, clearly show that Plaintiff remained well-qualified for his position as Operations Manager.

57. As a direct and proximate result of Defendant's unlawful acts of disability discrimination, Plaintiff was wrongfully terminated and damaged by the loss of present and future compensation and deprived of equal employment opportunities for experience and training to further qualify for future career advancement.

**NEGLIGENCE**

58. Plaintiff repeats and realleges each and every previous paragraph of his Complaint as though fully set forth here at length.

59. At all times relevant herein, Defendant had a duty to supervise and control the conduct and actions of its employees, and to ensure that the rights of employees to protection from the discrimination which occurred in this case, were not violated.

60. Defendant and its employees were negligent in their supervision and in their aforementioned conduct towards Plaintiff.

61. As a proximate result of the Defendant's negligence, Plaintiff has suffered and continues to suffer from loss of past, present and future wages, loss of employment benefits including the lost value of retirement benefits and costs of this lawsuit, other pecuniary losses, past, present and future mental and emotional distress, anguish and inconvenience.

62. As a further direct and proximate result of the negligence of the Defendant on the aforementioned date, Plaintiff has been damaged in an amount to be proven at trial.

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

63. Plaintiff repeats and realleges each and every previous paragraph of his Complaint as though fully set forth here at length.

64. In acting as alleged herein, Defendants have wrongfully and unreasonably breached express and implied promises and its duty implied in its employment agreement with Plaintiff to deal fairly and in good faith with Plaintiff.

65. As a direct and legal result of the conduct of Defendant, Plaintiff sustained substantial economic losses, including past and future compensation, other economic benefits, attorney's fees and litigation expenses. Plaintiff has also sustained loss of financial stability, peace of mind, and future security and has suffered embarrassment, humiliation, mental and emotional distress and discomfort, all to his detriment and damage in an amount to be proven at trial.

66. As Defendant's conduct was and is willful and malicious and thereby entitles Plaintiff

to recovery of exemplary and punitive damages in an amount to be proven at trial.

**BREACH OF CONTRACT**

67. Plaintiff repeats and realleges each and every previous paragraph of this Complaint as though fully set forth here at length.

68. At all times relevant to this action, Defendant has represented to its employees in various writings, including but not limited to its Employment Agreements, communications about personnel policies and procedures, employee guidelines, and past practices, that their employment relationship with Defendant would be based upon good faith and performance (merit), qualifications and seniority; that employees would be treated fairly and equitably, receiving just compensation for their services rendered to Defendant; would not be terminated except for cause and without justification for discipline or discharge and after conduction of a reasonable investigation, after providing fair and reasonable notice, an opportunity to correct deficiencies, and the application of progressive discipline. These provisions and representations contained in the Defendant's personnel and policy procedures, guidelines and communications, agreements, and past practices, all form part of Plaintiff's express employment contract and agreement with Defendant.

69. Prior to Defendant's discrimination and wrongful termination of Plaintiff, Plaintiff had performed all conditions, covenants, promises, duties and responsibilities required of Plaintiff to be performed in accordance and conformity with his employment contract.

70. On or about June 6, 2019, Defendant breached Plaintiff's employment contract and wrongfully discriminated against Plaintiff, in violation of its representations described herein.

71. As a proximate result of Defendant's actions, Plaintiff has suffered and continue to suffer substantial losses in earnings, job experience, and other employee benefits which Plaintiff would have received absent Defendant's breach, in an amount to be proven at trial.

Case 1:20-cv-00046 Document 1 Filed 12/03/20 Page 13 of 38

**JURY REQUEST**

Plaintiff hereby Requests a Jury Trial in the above-captioned matter.

**PRAYER**

**WHEREFORE**, Plaintiff prays for relief against Defendant as follows:

1. For all counts, for Compensatory, General and Special or Exemplary Damages in an amount to be proven at trial;
2. For costs of suit, reasonable attorney fees and expenses and costs of this action;
3. For pre-judgment interest as provided for under 42 U.S.C. §2000e-f(k);
4. That this Court enjoin Defendant's unlawful disability discrimination;
5. For such other and further relief as this Court deems necessary, just and proper, as against Defendant DZSP 21, LLC.

Respectfully submitted,

/s/_Mark Williams__________12/02/2020______
Attorney for Plaintiff, Date
*Robert E. Westermann, Jr.*

**VERIFICATION**

)
) ss:
)

I, ROBERT E. WESTERMANN, JR., being first duly sworn, depose and state that I am the Plaintiff in the above-entitled action and that I have read the foregoing Complaint and know the contents thereof. The same is true of my own knowledge except as to those matters which are therein alleged upon information and belief, and, as to those matters, I believe them to be true.

Dated: 12/2/20

/s/ Robert E. Westermann, Jr.
ROBERT E. WESTERMANN, JR.





EXHIBIT A

PHONE: 479-DZSP (3977) FAX: 479-3990 P.O. Box GH Hagåtña, GU 96932 www.dzsp21.com

# EMPLOYEE OFFER LETTER

September 21, 2018

Robert E. Westermann, Jr.
Suite C1B, Box 105
15532 Southwest Pacific Highway
Portland, OR 97224

Dear Mr. Westermann:

DZSP 21 LLC is pleased to offer you a full-time position, under the Naval Base Guam Base Operations Support Services Contract (BOSC), with the following terms:

**1. Position:**

You will be employed, full-time, as **Operations Manager** for the Company and will report to the Project Director of DZSP 21.

- This position is defined as a key person/ position within the BOSC and, as such, requires individual candidate approval by the Contracting Officer, Naval Facilities Engineering Command, Marianas (NAVFACMAR), Guam.
- You will be required to obtain and maintain a successful general background investigation, drug screening, and physical examination (especially as may be related to sleep disorders).
- You will be required to obtain and maintain any licenses, certifications and/or specific training required by and denoted in your position description.
- You will be required to obtain and maintain a Department of Defense Secret Security Clearance and/or a favorable National Agency Check with Inquiries (NACI), and/or pass a Defense Biometric Identification System (DBIDS) background investigation, as required for your position.
- Per BOSC requirements; you will also need to maintain eligibility to work in the United States, as required by the provisions of the Immigration Reform and Control Act of 1986 and Homeland Security Presidential Directive (HSPD) 12.

**2. General Expectations.** It is expected that you will comply with the following requirements:

- **Conflict of Interest**. EMPLOYEE will be required to fill out a Conflict of Interest Form. EMPLOYEE shall not engage, directly or indirectly, either in his/her own name or through the agency of another person, firm or corporation, in other employment, profession, occupation, service or business with DZSP 21 or the Department of Defense, on Guam. Violation of this provision may be grounds for termination for cause.

- **Information release and Protection**. During and after employment with DZSP 21, you will keep all Company and third-party Proprietary information confidential and shall not use any of it except for the purpose of carrying out authorized activities on behalf of the Company. Additionally, the DZSP 21 BOSC with the Navy requires Navy Contracting Officer approval prior to ***any*** release of information to the public or news media that relates to this contract.

- **Employer Policies and Procedures**. DZSP 21 has established a variety of policies and standards to reflect our commitment to equal employment opportunity for all employees; adherence to outstanding personal and professional Ethics and Business Conduct; and, to your Health and Safety. Please take time to review these policies and how they apply to you. Violation of key policies, especially those related to illegal drugs, timekeeping, safety, and security, may be grounds for termination for cause.

- **Hours of Work**. The normal workweek is generally five days per week/eight hours per day. Notwithstanding any provisions to the contrary, it is understood and agreed that, as an Exempt position the EMPLOYEE may be required (and is expected) to periodically work more than 40 hours during a workweek in order to satisfy urgent or surge workplace requirements, for which such hours do not qualify for overtime payments as detailed in US Department of Labor regulations for Exempt employees. EMPLOYEE further agrees that hours worked will be promptly recorded in the designated time keeping system or as otherwise directed by the Company. Failure to accurately and/or timely record work hours may be grounds for termination for cause.

**3. Your compensation package includes:**

- **Signing Bonus**. DZSP 21 offers a onetime signing bonus of **$6,000**, to be paid shortly after your arrival.

- **Salary.** You will be paid a starting bi-weekly salary of **$5,600** ($70 per hour or $145,600 annually).

- **H&W Benefits**. Health insurance is offered under a preferred provider plan selected by DZSP 21 at a nominal cost to you. If you elect medical coverage, you may also be enrolling in dental, vision, and life insurance coverage as well, depending on the type of benefits package being offered at the time of hire or at annual enrollment. Coverage for other family members may require additional modest bi-weekly contributions. You may also elect to opt out of coverage if you meet specific conditions as defined by law.

- **Retirement Plan.** A 401K plan that provides an employer profit sharing contribution of **5%** of salary.

- **Home Leave.** DZSP 21 will provide annual Home Leave allowance for Employee of $2,500, awarded at the annual anniversary of your date of hire. You will also be provided 40 hours of PTO at the anniversary of your hire date as part of your Home Leave benefit.

- **PTO.** Based on your tenure with the company, you will receive Paid Time off (PTO) at an accrual rate of 4.615 hours per pay period (reduced for hours not worked). Scheduling of PTO shall be subject to workload constraints at the given time and the approval of your manager. DZSP 21 will not bear, or be responsible for, any personal EMPLOYEE expenses for PTO travel or related costs.

- **Housing Allowance.** Housing Allowance will be paid at a monthly unaccompanied rate of $2,520. [Based on Joint Travel Regulations, Overseas Housing Allowance, for an O-5 without dependents.]

- **Vehicle.** A fleet vehicle will be made available for your use. Insurance and maintenance will be covered by the BOSC. You will be responsible for fuel costs. For any at-fault accident, you will be responsible for the insurance deductible, which is currently $500.

- **Relocation Costs**. DZSP 21 will provide commercial air transportation from the original point of hire, at the lowest available/ reasonably scheduled economy airline fare, for EMPLOYEE to Guam and return upon completion of your term of employment. EMPLOYEE is authorized to bring two bags of no more than 50 pounds each. Any charges levied by the air carrier for the second bag will be reimbursed. Additionally, DZSP 21 will provide shipment of up to 1,000 pounds of household goods from the original point of hire to Guam and return. Should the EMPLOYEE voluntarily resign from their position less than two years after their start date on Guam, DZSP 21 shall not be responsible for return transportation benefits as described above. Further, should EMPLOYEE be terminated for cause, DZSP 21 will not be responsible for return transportation benefits as described above.

- **Holidays**. EMPLOYEE shall be entitled to ten holidays in accordance with DZSP 21 policy. A key element of that policy is that EMPLOYEE must be in a paid status on the workdays before and after the Holiday to receive holiday pay. Holidays for employees shall be holidays with full pay. However, where duties may be required of the EMPLOYEE on an official holiday, they may be granted approval to substitute an alternate day off, at DZSP 21's sole discretion.

- **Probationary Period.** All DZSP 21 employment offers are subject to a 90-day probationary period. Therefore, EMPLOYEE shall be employed on a probationary basis during the first 90 days of the Term of Employment. The EMPLOYER may terminate this Agreement and employment of the EMPLOYEE hereunder at any time during the probationary period without any liability to the EMPLOYER except to pay the salary up to the date of termination and, if applicable, to provide return transportation to Employee's Point of Hire. No other expenses incurred by EMPLOYEE shall be

reimbursed. EMPLOYEE will be responsible for shipment of household goods previously shipped and/or acquired. EMPLOYEE shall also be responsible for a pro-rated return of the signing bonus.

**5. Termination of Employment.**

- **Termination for Convenience of Employer.** DZSP 21 may, at its discretion, and at any time, terminate this Agreement by giving thirty (30) days' notice or pay in lieu thereof (not applicable during probationary period). In the event of such termination, EMPLOYEE shall be entitled to receive compensation for services performed through the date of termination, plus any accrued and unused PTO.

- **Termination for Cause.** DZSP 21 may at any time terminate this Agreement for cause. In the event of termination for cause, EMPLOYEE shall be entitled to receive compensation for services performed through the date of termination, plus any accrued and unused PTO.

- **Resignation.** The EMPLOYEE may, at any time, voluntarily terminate employment under this Agreement. In the event of such termination, the EMPLOYEE shall be entitled to receive compensation through the date of termination, plus any accrued and unused PTO. If EMPLOYEE resigns prior to the two-year anniversary date, EMPLOYEE will not be provided relocation benefits, if applicable, nor be entitled to compensation for any other benefits not specifically required by applicable law or otherwise addressed herein.

Your signature below signifies your acceptance and acknowledgement of this employment agreement as stated herein; it also confirms your understanding that employment with DZSP 21 can be terminated at any time with or without cause, either by you or the Company.

Sincerely,

**Wayne L. Cornell**
**Project Director**

---

**I have read, acknowledge and agree to employment details stated herein.**

Accepted / Declined (circle one)

9/21/18

Robert E. Westermann, Jr.      Date

cc: Employee File

P.O. Box GH • Hagåtña, GU 96932 • phone 671-479-3977• fax 671-479-3990



EXHIBIT B

# NEW HIRE DATA FORM

**Employee to complete shaded areas.**

Check one: New Hire [X] Rehire [ ]

(From) Date of Hire/Rehire: 10 / 01 / 2018

Employee # (CostPoint assigned): 22795

Location/Site Supervisor: 1200 / Program Management

Employee's Name (Last, First, M.I.) WESTERMANN, ROBERT E.

Position Code (HR assigned): DZOPSM

Position Title: Operations Manager

Org. Unit:

Personnel Area: 1200

Employee Group:

JH5 Code:

Maintain Employee Master

**Last Name:** WESTERMANN **First, M.I.** Robert E.

**Social Security No.:** XXXXXXXXXX

Maintain Employee Master

**Birth date:** XXXXXXXXXX

**Marital Status:** Married [X] Single [ ] Widowed [ ] Divorced [ ]

**Gender:** Female [ ] Male [X]

Personnel Annex: 1200 CostPoint Organization: Locator Code:

Locator Code

**Home Address line 1: Street:**

(Address line 2 if needed):

**City:** **State:** **Zip Code**

**Home Phone Number:** XXXXXXXXXX

**Mailing Address:** 15532 S.W. Pacific Hwy Ste. C1B

(Mailing line 2 if needed): Box 105

**City:** Tigard **State:** OR **Zip Code** 97224

**Cell Phone Number:** XXXXXXXXXX

Maintain Employee Master Address

**Emergency Contact #1**

**Name:** Kim Randles

**Relation:** Sister

**Address:** 5310 S.W. Santa Monica Ct.

**Phone:** Portland, OR 97221

**Cell:** XXXXXXXXXX

**Emergency Contact #2**

**Name:** MADELAIN WESTERMANN

**Relation:** Wife

**Address:** 12150 S.W. 5th St. Beaverton, OR 97005

**Phone:**

**Cell:** XXXXXXXXXX

Maintain Employee Master – Additional Address

**Work Address: (Location)** DZSP 21 LLC

**Address line 1:** P.O. BOX GH **City:** HAGÅTÑA **State:** GUAM **Zip Code:** 96932

**Telephone number:** (671) 479-3984/3975

Maintain Employee Master – Additional Address

Status: Active [X] Inactive [ ] FMLA [ ] Inactive Accr Leave [ ]

Planned Working Time: FULL – TIME REGULAR

Work Hours: Per week: 40 HRS

Part-time employee: [ ] Select if applicable

Employment Percent: Full Time: 100% Part Time: ____% (enter number <100% & check Part-time employee)

Maintain Employee Master – Salary Info

Basic Pay: Reason: New Hire [X] Rehire [ ] PLC DZOPSM GLC: E-PM

Amount (Regular Hourly Pay Rate) $ 70.00 Annual Salary: $ 145,000.00 (verify system calculation)

Labor Settings

HRO-F-0001

REV. 4

* * ROUTE TO ASSURE PRIVACY * *

Copies to: Human Resources



# NEW HIRE DATA FORM

**I-9 Data**

Residence Status: Alien Authorized to Work ☐ Citizen ☒ Non-Citizen ☐ Permanent Resident ☐

Enter Personal Identification information from I-9 Form:

**HR Data** / **Maintain Employee Master**

**Additional Personal Data:**
**Ethnic Origin: Check below**
White ☑ Black ☐ Hispanic ☐
Asian/Pacific Islander ☐ Native Amer/Alaskan ☐

**Military Status: (check all that apply):**
Active ☐ Inactive ☐
Retired ☐ Reserve ☐ Not Applicable ☑

**Veteran Status:** ☐ Special disabled veteran
☐ Vietnam-era veteran
☐ Other protected veteran
☑ Non-veteran (system default)

**Disabled:**
No ☐
Yes ☑ (Question completed at employee's option)

**Main Emp Mas. - Leave**

Date Specifications (verify all defaults): Company Seniority Date (if different than hire/rehire date): ____/____/____

Vacation Service Date (if different than hire/rehire date): ____/____/____

Union Seniority Date (if applicable): ____/____/____

**Employee HR Setup – Ed, Skills & Training**

**Educational est:** (00) High School ☐ (03) Trade School ☐ (01) University/college ☑ (04) Vocational School ☐ (02) Technical School ☐ (05) Certificate Program ☐

**Start date:** 09 / 01 / 72 **to date:** 12 / 15 / 77

**Education/training (type):** University **Institute/location:** OREGON STATE **Country:** USA

**Certificate:** (00) High school diploma ☐ (03) Master's Degree ☐ (02) Associate's Degree ☐ (04) Doctorate ☐ (03) Bachelor's Degree ☑ (05) Certificate/License ☐

**Professional License, Registration or Certification:**

Type: ______ Registration #: ______ Issue Date: ____/____/____ Exp. Date: ____/____/____

Type: ______ Registration #: ______ Issue Date: ____/____/____ Exp. Date: ____/____/____

**Employee HR Setup - Security**

**Security Clearance: Secret** ☐ **Confidential** ☐ **None** ☒ inprocessing as of 7/28

**Clearance date:** ____/____/____

**Badge Type: Regular** ☒ **"C"** ☒ **Naval Hospital** ☐ **PAO** ☐ **Camera** ☐ **"SC"** ☐

Employee's Name (Last, First, M.I.) WESTERMANN, Robert E.

Employee's Signature: [signature] Date: 10 / 2 / 18

Hiring Manager's Signature: __________ Date: ____/____/____

Business/Staff Unit Approval (if required): __________ Date: ____/____/____

Authorized Human Resources Signature: __________ Date: ____/____/____

HRO-F-0001 REV. 4

* * ROUTE TO ASSURE PRIVACY * *
Copies to: Human Resources



EXHIBIT C

**Self-Identification Form**

In accordance with Sections 503 and 504 of the Rehabilitation Act of 1973, the provision of this information is on a voluntary basis and will not be included in your personal file. Please complete if you would like to self-identify as a person with a disability.

☐ **Disabled**

Whether or not you have self-identified as a person with a disability, please sign below as having been given the opportunity to participate in the self-identification process:

Print Name Robert WESTERMANN

Employee Signature [signature] Date 10/2/18

Annex / Work Location 0200 / BLDG. 100

# EXHIBIT D

P.O. Box GH Hagatna, GU 96932
Phone: 339-DZSP (3977) Fax: 339-3990
www.dzsp21.com
DZSP|21

22 November 2018

Subject: Letter of Endorsement ICO Robert E. Westermann, Jr.

To Whom It May Concern;

I have had the privilege of knowing Bob Westermann for 20 years, ever since he first worked for me on the U. S. Army's Base Operations Support (BOS) Services Contract at the Reagan Test Center, Kwajalein Island, Kwajalein Atoll, Republic of the Marshall Islands. First, as Project Manager for our Repaving Project on the islands of Kwajalein, Roi Namur and Meck. Following the successful completion of that project, I selected him to be the Meck Island Site Manager and our representative to the National Missile Defense Agency. Following the loss of our BOS contract to a competitor, he went on to bigger and better things with Alaskan Native Corporations and I continued in the BOS industry with other companies at other locations.

I became President and Chief Executive Officer of DZSP 21 LLC in 2007 and Project Director for its Navy BOS Contract serving the military on the island of Guam. Earlier this year, I needed a consultant to analyze our asset management processes. Fortunately, Bob was available, and I brought him to Guam where we had him look at several issues across the contract. When my Public Works Director/Operations Manager joined the staff of NAVFACMAR on Guam, I hired Bob as my Operations Manager. In both roles (consultant and Operations Manager), he has deftly addressed complex technical and interpersonal issues, developed corrective action plans and facilitated solutions. He has become a key member of my staff.

Throughout the years that Bob has worked for me, he has been a consistent stellar performer, manager and leader. He quickly gains the trust and confidence of both customers and the work force and deals with all personnel and customers with honesty, fairness and integrity. His experience and professionalism have been invaluable in dealing with and resolving difficult situations and issues.

I would not hesitate to recommend Bob for any position of responsibility or authority (and have). He has consistently demonstrated an ability to foster positive relationships with all shareholders and to do what is necessary to achieve the established goals of the organization in a fair, ethical and forthright manner.

Wayne L. Cornell, MSCE, PE, FSAME
President and CEO, DZSP 21 LLC
Project Director, Navy BOSC, JRM
PO Box GH, Hagatna, GU 96932
(671) 339-3998 [work]; (671) 488-5837 [mobile]
wayne.cornell@dzsp21.com

EXHIBIT E

DZSP 21

## EMPLOYEE PROBATIONARY PERIOD EVALUATION FORM

This form can be used more than once and should be used anytime during the employee's probationary period. **Evaluation(s) must be completed at 45 day and 90 day intervals.**

Westermann, Robert E. Jr
Employee Name (Last, First, Middle Initial)

22795
Employee #

Ops Manager
Job Title

Wayne L Cornell
Manager/Supervisor Name

0200
Annex / Department

Date of Hire - 14 Nov 18
Evaluation Period (MM/DD/YY to MM/DD/YY)

☑ 45 day ☐ 90 day
Evaluation Period

2 Oct 2018
Date of Hire / Transfer

## RATING CATEGORIES AND DEFINITIONS FOR PROBATIONARY PERIOD EVALUATION

**Far Exceeds** Consistently exceeds expectations. Performance is consistently characterized by exceptionally high work quality. Employees rated as outstanding repeatedly make contributions which are far above the requirements of their position. They use exceptional judgment and regularly exhibit mastery of their job assignments.

**Exceeds** Frequently exceeds expectations. Performance indicates thorough attention to and the completing of all assigned responsibilities. Unusual problems are properly considered and generally well handled. Individuals strive for job improvement and initiative is regularly displayed. The contribution of these individuals is usually beyond the expected.

**Meets and Sometimes Exceeds** Performance meets the requirements of the position. The position is being covered in an adequate manner and the responsibilities are being handled competently. THIS RATING IS NOT TO BE CONSIDERED AS MARGINAL PERFORMANCE.

**Sometimes Meets, but Needs Improvement** Performance does not consistently meet minimum expectations of the position. Supervisor needs to provide specific written expectations for improvement.

**Did Not Meet Expectations** Performance does not meet the requirements of the position. The result is generally termination.

Check boxes below to indicate performance:

| Performance Areas Evaluated | Far Exceeds | Exceeds | Meets and Sometimes Exceeds | Sometimes Meets, but Needs Improvement | Did Not Meet Expectations |
|---|---|---|---|---|---|
| Customer Interaction | ☐ | ☑ | ☐ | ☐ | ☐ |
| Safety Awareness | ☐ | ☑ | ☐ | ☐ | ☐ |
| Job Knowledge (Possesses the KSAs for the job) | ☑ | ☐ | ☐ | ☐ | ☐ |
| Quality of work | ☐ | ☑ | ☐ | ☐ | ☐ |
| Quantity of work | ☐ | ☑ | ☐ | ☐ | ☐ |
| Follows instructions | ☐ | ☑ | ☐ | ☐ | ☐ |
| Personal initiative (does job without constant direction) | ☐ | ☑ | ☐ | ☐ | ☐ |
| Solving routine problems on own | ☐ | ☑ | ☐ | ☐ | ☐ |
| Attitude toward work and company | ☐ | ☑ | ☐ | ☐ | ☐ |
| Interpersonal skills | ☐ | ☑ | ☐ | ☐ | ☐ |
| Ability to accept coaching | ☐ | ☑ | ☐ | ☐ | ☐ |
| Communication skills | ☐ | ☐ | ☑ | ☐ | ☐ |
| Teamwork | ☐ | ☑ | ☐ | ☐ | ☐ |
| Attendance | ☐ | ☑ | ☐ | ☐ | ☐ |
| Punctuality | ☐ | ☑ | ☐ | ☐ | ☐ |
| Planning & Organization | ☐ | ☑ | ☐ | ☐ | ☐ |
| Integrity (Ethical, Honest, Respectful approach) | ☑ | ☐ | ☐ | ☐ | ☐ |
| Attire appropriate for job | ☐ | ☐ | ☑ | ☐ | ☐ |

Westermann, R.E. JR
Employee Name

22795
Employee #

10/2 - 11/14
Evaluation Period

11/14/18
Date

 ## EMPLOYEE PROBATIONARY PERIOD EVALUATION FORM

**Comments:**

**Manager/ Supervisor: Answer the following:**

1. What areas demonstrated far exceeds?
   JOB KNOWLEDGE + INTEGRITY
2. What are the employee's strongest points?
   EXPERIENCE!
3. What areas need to be improved? Provide specific details / examples
   HEALTH ISSUES ARE AFFECTING EFFECTIVENESS AND MUST BE RESOLVED! SEE ~~BELOW~~ BELOW!
4. Describe any incidents that have caused you concern or seemed to cause the employee concern.
   2 VEHICLE ACCIDENTS, 1 SEVERE FALL (1 accident and 1 fall during consultation visit)
5. Describe any concerns to be discussed with the employee.
   HEALTH ISSUES (drowsiness, lack of focus, slurred/slowed speech, altered mobility/balance etc.)

**Recommended Action:**

1. ☑ **Successfully completed 45 days probationary period (To continue with 90 days probationary period)**
2. ☐ **Successfully completed 90 days probationary period** (SEE 3.-5. ABOVE)
3. ☐ **Extend probationary period for additional 30 days (Program Management for review and required signature)**
4. ☐ **Termination (Program Management for review and required signature)**

**Reason for termination:** ______________________

**Employee Signature:** [signature] **Date:** 11/14/18

**Annex Manager Signature:** [signature] WAYNE CORNELL **Date:** 14 NOV 2018

**Program Management Signature:** ______________________ **Date:** __________

(NOTE: Required only for Recommended Actions #3 and #4)

**FOR OFFICIAL USE ONLY**

**HR Manager Signature:** ______________________ **Date:** __________

☐ Uploaded data on HR Module **HR Personnel Initial:** __________

**Employee Name** **Employee #** **Evaluation Period** **Date**



# EMPLOYEE PROBATIONARY PERIOD EVALUATION FORM

*This form can be used more than once and should be used anytime during the employee's probationary period.*
***Evaluation(s) must be completed at 45 day and 90 day intervals.***

| | | |
|---|---|---|
| Westermann, Robert E. Jr. | 22795 | Operations Mgr. |
| **Employee Name (Last, First, Middle Initial)** | **Employee #** | **Job Title** |
| Wayne L. Cornell | 0200, Program Management | |
| **Manager/Supervisor Name** | **Annex / Department** | |
| 10/02/2018 - 12/31/2018 | ☐ 45 day ■ 90 day | 10/02/2018 |
| **Evaluation Period (MM/DD/YY to MM/DD/YY)** | **Evaluation Period** | **Date of Hire / Transfer** |

## RATING CATEGORIES AND DEFINITIONS FOR PROBATIONARY PERIOD EVALUATION

**Far Exceeds** Consistently exceeds expectations. Performance is consistently characterized by exceptionally high work quality. Employees rated as outstanding repeatedly make contributions which are far above the requirements of their position. They use exceptional judgment and regularly exhibit mastery of their job assignments.

**Exceeds** Frequently exceeds expectations. Performance indicates thorough attention to and the completing of all assigned responsibilities. Unusual problems are properly considered and generally well handled. Individuals strive for job improvement and initiative is regularly displayed. The contribution of these individuals is usually beyond the expected.

**Meets and Sometimes Exceeds** Performance meets the requirements of the position. The position is being covered in an adequate manner and the responsibilities are being handled competently. THIS RATING IS NOT TO BE CONSIDERED AS MARGINAL PERFORMANCE.

**Sometimes Meets, but Needs Improvement** Performance does not consistently meet minimum expectations of the position. Supervisor needs to provide specific written expectations for improvement.

**Did Not Meet Expectations** Performance does not meet the requirements of the position. The result is generally termination.

Check boxes below to indicate performance:

| Performance Areas Evaluated | Far Exceeds | Exceeds | Meets and Sometimes Exceeds | Sometimes Meets, but Needs Improvement | Did Not Meet Expectations |
|---|---|---|---|---|---|
| Customer Interaction | ☐ | ■ | ☐ | ☐ | ☐ |
| Safety Awareness | ☐ | ■ | ☐ | ☐ | ☐ |
| Job Knowledge (Possesses the KSAs for the job) | ■ | ☐ | ☐ | ☐ | ☐ |
| Quality of work | ☐ | ■ | ☐ | ☐ | ☐ |
| Quantity of work | ☐ | ■ | ☐ | ☐ | ☐ |
| Follows instructions | ☐ | ■ | ☐ | ☐ | ☐ |
| Personal initiative (does job without constant direction) | ■ | ☐ | ☐ | ☐ | ☐ |
| Solving routine problems on own | ☐ | ■ | ☐ | ☐ | ☐ |
| Attitude toward work and company | ☐ | ■ | ☐ | ☐ | ☐ |
| Interpersonal skills | ☐ | ■ | ☐ | ☐ | ☐ |
| Ability to accept coaching | ☐ | ■ | ☐ | ☐ | ☐ |
| Communication skills | ☐ | ■ | ☐ | ☐ | ☐ |
| Teamwork | ☐ | ■ | ☐ | ☐ | ☐ |
| Attendance | ☐ | ■ | ☐ | ☐ | ☐ |
| Punctuality | ☐ | ■ | ☐ | ☐ | ☐ |
| Planning & Organization | ☐ | ■ | ☐ | ☐ | ☐ |
| Integrity (Ethical, Honest, Respectful approach) | ■ | ☐ | ☐ | ☐ | ☐ |
| Attire appropriate for job | ☐ | ■ | ☐ | ☐ | ☐ |

| | | | |
|---|---|---|---|
| Westermann, Robert E. Jr. | 22795 | 10/02 - 12/31/18 | 01/08/2019 |
| **Employee Name** | **Employee #** | **Evaluation Period** | **Date** |



## EMPLOYEE PROBATIONARY PERIOD EVALUATION FORM

**Comments:**

Mr. Westermann has made improvements in areas discussed 11/14/2018.
I have great expectations for Mr. Westermann.

**Manager/ Supervisor: Answer the following:**

1. What areas demonstrated far exceeds?

   Job knowledge, initiative and integrity.

2. What are the employee's strongest points?

   Experience in Operations, maintenance, construction and contracting.

3. What areas need to be improved? Provide specific details / examples.

   None noted this rating period.

4. Describe any incidents that have caused you concern or seemed to cause the employee concern.

   None noted this rating period.

5. Describe any concerns to be discussed with the employee.

   Reminders from our 11/14/2018 meeting.

**Recommended Action:**

1. ☐ **Successfully completed 45 days probationary period (To continue with 90 days probationary period)**
2. ☒ **Successfully completed 90 days probationary period**
3. ☐ **Extend probationary period for additional 30 days (Program Management for review and required signature)**
4. ☐ **Termination (Program Management for review and required signature)**

   **Reason for termination:** ____________________

**Employee Signature:** [signature] **Date:** 1/9/19

**Annex Manager Signature:** [signature] **Date:** 01/08/2019

**Program Management Signature:** ____________________ **Date:** ____________
**(NOTE: Required only for Recommended Actions #3 and #4)**

| FOR OFFICIAL USE ONLY |
|---|
| **HR Manager Signature:** [signature] **Date:** 1/9/19 |
| ☒ Uploaded data on HR Module **HR Personnel Initial:** [initials] |

| Westermann, R. E. Jr. | 22795 | 10/2 - 12/31/18 | 01/08/2019 |
|---|---|---|---|
| **Employee Name** | **Employee #** | **Evaluation Period** | **Date** |

 

EXHIBIT G

Phone: 339-DZSP (3977) Fax: 339-3990 P.O. Box GH Hagåtña, GU 96932 www.dzsp21.com

June 6, 2019

To: Robert E. Westermann Jr.
[Hand Delivered]

Subject: Notice of Termination

Dear Mr. Westermann,

The role, responsibilities and representations of our Operations Manager are crucial to the company's success. With the recent "no show, no call" situation and other performance concerns we have previously discussed at various and numerous times, it is evident that a personnel change needs to be made.

We find no added benefit to delaying this notice. Therefore, effective Friday, June 7, 2019, your employment with DZSP 21 LLC will be terminated. You will be paid through the week ending June 30 (in lieu of a two-week notice) including any accrued Paid Time Off (PTO) and provided a return trip (least cost, one-way economy airfare, most reasonable direct route) to your Point of Hire. DZSP 21 will also provide shipment of up to 1,000 pounds of household goods from Guam to your original point of hire. You will be required to out-process with a Human Resources representative.

Please be advised that your healthcare benefits will expire on June 30, 2019. You will receive information from The Contractor's Plan provided by Fringe Benefit Group (FBG), concerning how to convert certain employee benefit plan coverage, including continuation of group health coverage, under the Consolidated Omnibus Reconciliation Act (COBRA).

Should you have any questions or concerns, please feel free to contact the undersigned at 339-3998 or the Human Resources Manager, Ms. Therese Stanley at 339-3974.

Sincerely,

Wayne L. Cornell
Project Director

WLC/tk

Your signature below acknowledges receipt of this letter.

I will not Sign And Do not Agree.
Robert E. Westermann Jr.

6/6/19
Date

CC: Therese C. Stanley, HR/ Labor Relations Manager; Shannon Quinata, Deputy Project Director

On 6/6/19 @ 2:15pm Wayne Cornell ~~told~~ told me that I was a medical liability to his Company. He said he would not write it down

EXHIBIT H

a. The employee will:

1. Complete the **HRO-F-0004; Absence Request Form** (Attachment A)
2. Forward to his/her Annex Manager/Supervisor for signature approval.
3. Annex Supervisor/Manager will forward the Absence Request form and supporting documentation (if any) to Human Resources Manager for approval.

b. Employee must complete timesheet in time collection for the leave period using appropriate project abbrev.

Employees who have an unplanned absence and are unable to report to work because of a sudden illness or other unforeseen situation must notify (telephone) their supervisor or Annex Manager as early as possible on that day, but no later than the start of the employee's work shift stating the reason for the absence and expected date of return to work. In the case of a short term illness, the employee must notify (telephone) their supervisor or Annex Manager daily. If an illness extends beyond five working days, the employee should notify their supervisor or Annex Manager weekly.

Employees who are absent from work for three consecutive days without giving proper notice to DZSP 21 will be considered as having voluntarily terminated their employment with DZSP 21. See Human Resources Policy HRO-P-0001 DZSP 21 Disciplinary Policy and Procedure.

Employees must notify their supervisor or Annex Manager prior to leaving DZSP 21 premises during scheduled work hours.

Employees are expected to report for work during inclement weather conditions unless indicated otherwise by DZSP 21 management. Employees who report to work late because of inclement weather must use PTO, vacation or leave without pay.

***No provisions of this or any other DZSP 21 policy or procedure will be construed as an employment agreement. Employment with DZSP 21 can be terminated at any time with or without cause by either the employee or by DZSP 21.***

## 6.0 ATTACHMENTS:

**Attachment A:** HRO-F-0004; Absence Request form

EXHIBIT I

## Attachment A

## DZSP 21 DISCIPLINARY GUIDELINES

| # | Disciplinary Rule Violation | Recommended (Does not include Supervisors or Managers) |
|---|---|---|
| 1 | Creation of fire, safety, or health hazards: failure to use safety devices and personal protective equipment; or failure to comply with procedures provided for employees and public protection. | Progressive steps up through immediate termination. |
| 2 | Unsatisfactory quality or quantity of work. | Progressive steps up through immediate termination. |
| 3 | Unexcused absence, excessive absenteeism, absence from work without notifying the Company of less than three days, failure to return to work promptly upon expiration of leave of absence, or tardiness without a valid reason. | Progressive steps up through immediate termination. |
| 4 | Failing to immediately notify supervisor of an on-the-job accident or injury. | Progressive steps up through immediate termination. |
| 5 | Smoking in facilities or vehicles designated by the Company as smoke-free. | Dependent upon severity and/or repetition of violation. May include discipline up to and including immediate termination. |
| 6 | Violation of or non-compliance with Company and/or Government Safety rules, policies, procedures, directives and/or regulations. | Dependent upon severity of violation. May include discipline up to and including immediate termination. |
| 7 | Operating vehicles, aircraft, machines, tools, or equipment; climbing on aircraft of ship; or entering a restricted area without permission. | Progressive steps up through immediate termination. |
| 8 | Leaving one's workplace for other than assigned duties without authorization from the supervisor, except for health purposes. | Dependent upon severity and/or repetition of violation. May include discipline up to and including termination. |
| 9 | Using Company-owned or customer-owned equipment, vehicles, facilities, services, employees, or subcontractors for personal benefit or for the personal benefit of others. | Dependent upon severity and/or repetition of violation. May include discipline up to and including immediate termination. |
| 10 | Directly or indirectly selling any item or posting literature or other matter on Company premises without proper authorization. | Progressive Steps up through immediate termination. |
| 11 | Unauthorized solicitation, distribution of literature or other matter in working areas during working time, without proper authorization. | Progressive steps up through immediate termination. |
| 12 | Violation of Company tool control policy. | Dependent upon severity and/or repetition of violation. May include discipline up to and including termination. |
| 13 | Willful or negligent acts that result in substantial rework or damage to Company property, property entrusted to it by others, including the Government, employees or visitors. | Dependent upon severity of violation. May include discipline up to and including immediate termination. |
| 14 | Failure to comply with DZSP's Code of Ethics and Business Conduct. | Dependent upon severity of violation. May include discipline up to and including immediate termination. |
| 15 | Harassment of an employee of a sexual, racial, ethnic, religious, or any other nature. | Dependent upon severity of violation. May include discipline up to and including immediate termination. |
| 16 | Causing or contributing to a disturbance by running, yelling, playing practical jokes, horseplay, throwing things, harassing employees, or in other ways disrupting a safe and orderly workplace. | Dependent upon severity of violation. May include discipline up to and including termination. |
| 17 | Gambling, fighting, disorderly conduct, and conduct that violates common decency or morality (including abusive language). Attempting to or actually intimidating, threatening or coercing another person. Causing bodily injury of any kind to another; assault battery or fighting on Company premises or in connection with work-related matters. | Dependent upon severity of violation. May include discipline up to and including immediate termination. |
| 18 | Violation of any law. | Dependent upon severity of violation. May include discipline up to and including termination. |
| 19 | Retaliation or retribution against any employee for complying with the Company's Code of Business Ethics and Business Conduct, Standards of Conduct, or other business policies, procedures or practices. | Dependent upon severity of violation. May include disciplinary action up to and including immediate termination. |
| 20 | Failure or refusal to cooperate with or interfering in a Company investigation. | Dependent upon severity of violation. May include disciplinary action up to and including immediate termination. |

Social Security Administration
Important Information

EXHIBIT J

SOCIAL SECURITY
SUITE 100
11975 SW 2ND ST
BEAVERTON OR 97005

(866) 964-2036

ROBERT EUGENE WESTERMANN JR
8250 SW APPLE WAY
APT F101
PORTLAND OR 97225

7-13-2015
John Denecke
Service Representative
(866)964-1776 x 12010
- Work Report -

Claim Number: XXXXXXXXXX
Telephone Appointment Confirmation

Date: July 29, 2014
Phone: (800) 772-1213

Thank you for contacting us for a telephone appointment with our office. This is confirmation of the date and time of your telephone appointment. Please have this notice available when we call you for your appointment.

Type Of Claim: Disability
Date Of Appointment: September 16, 2014
Time Of Appointment: 01:30 PM

Your Telephone Appointment

We will call you at the telephone number shown on our records, 503-213-0238. If this number is incorrect or changes, or if your address as shown above changes, please let us know where we can reach you. We will make every effort to call you at your scheduled appointment time. However, if our call is delayed, we will keep any delay to a minimum.

ROBERT EUGENE WESTERMANN JR
(NH NAME)

XXXXXXXXXX
(NH SSN)

What We Need

We need the proof listed below to complete your Social Security claim. Please have those items that you can get easily with you at the time of your telephone appointment. We will ask you to get it to us as soon as possible. We cannot accept a photocopy of most proofs unless the photocopy is certified by the office that issued the original. However, we can accept a photocopy of a W-2, tax return or medical report if we request these items. We will return the items to you. Even if you don't have all the items that apply to you, you should keep your appointment. We will help you get the information you do not have.

Here is what we will need for you or the person for whom you are applying:

Bank statement or checkbook for the account where you would like the payments deposited.

Please be available near your phone approximately five minutes before your scheduled appointment time. If you are unable to keep your appointment, please contact us at the above number to reschedule your appointment.

You should try to keep your appointment because our talk will help in filing the necessary application. We can't decide if you are eligible for benefits until you file an application. And, the date you file an application can make a difference in the amount we can pay you. We can use the date you contacted us as your filing date for Social Security benefits if you file an application within 6 months of the date of this letter.

When you file an application, we will review the case and make a decision. If you do not agree with what we decide, you can appeal the decision.

You Can Also Apply Online at www.socialsecurity.gov.

- You can apply for Social Security retirement and disability benefits, complete disability report forms, and apply for Extra Help with Medicare Prescription Drug Plan Costs on the Internet.
- Applying online is secure and confidential. You can work at your own pace and enter information at your convenience.
- If you finish your application online, you do not need to keep your appointment. Please call to cancel it at 1-800-772-1213.
- Starting your application or forms online will save you time even if you do not finish. One of Social Security's representatives will assist you in completing your applications at your appointment.



## Westermann, Robert (DZSP21)

**Subject:** FW: Hi and Robert Westermann

**Importance:** High

**From:** Cornell, Wayne (DZSP21) <Wayne.Cornell@dzsp21.com>
**Sent:** Tuesday, June 12, 2018 7:42 AM
**To:** Robert Westermann <bobwestermann@gmail.com>
**Subject:** FW: Hi and Robert Westermann
**Importance:** High

Bob:

You have a friend!!
See Mike's remarks below.
Hopefully, your head doesn't get too swelled; you need to fit on an airplane.

Be advised, Guam doesn't have the best of medical facilities unless you have access to the Navy's Hospital.
It's the reason that I asked about your health. However, St. Luke's Hospital in Global City, Manila, Philippines is ranked like #18 in the world and where we go for our executive check-ups and Pat's many issues.

wayne

Wayne L. Cornell, MSCE, PE, FSAME
President and CEO
DZSP 21 LLC
Project Director, Navy BOSC, JRM
PO Box GH
Hagatna, GU 96932
(671) 339-3998
(671) 488-5837 [mobile]
wayne.cornell@dzsp21.com

***Think Safety Always***

**From:** Loose, Mike [mailto:Mike.Loose@parsons.com]
**Sent:** Tuesday, June 12, 2018 2:24 AM
**To:** Cornell, Wayne (DZSP21) <Wayne.Cornell@dzsp21.com>
**Subject:** RE: Hi and Robert Westermann

Wayne,

You may not remember, but I contacted you in early 2015 and told you that our Diego Garcia LLC was considering Bob Westermann for our Business Manager job and you gave Bob a 'glowing endorsement'. After our conversation, I called our LLC partner and told them to hire him...as my most trusted friend told me he was a 'must pick'.

We brought Bob on board Diego Garcia in February 2015 as the Business Manager. Bob was the Superstar that you said he was. He studied hard, put in long hours, and very quickly mastered his job and more importantly, gained the complete trust of the many customers on island, his peers, his staff, and the workers on island.

That said, the PM for our contract was failing and had lost the confidence of the USG, especially the island Commanding Officer and the Contracting Officer. Our senior LLC partner and I visited the island in May 2015 and prior to our departure from the island, we fired the PM and fleeted up Bob Westermann to be the PM. We had Doug Markell fulfill the role of BM under Bob's oversight and direction.

As the PM and with oversight of the BM role, Bob absolutely shattered our and the Customers' high expectations. In an amazingly short period of time, he completely turned the contract around, won over all the customers, achieved unity of the staff and production crews, increased productivity and responsiveness, and morale.

Regretfully, on 23 August, Bob complained of chest pains and the Diego Garcia medical staff diagnosed him with a blood clot in his lung and they directed an immediate air medevac from Diego Garcia to Singapore. He was held in Singapore for observation and minor treatment and then sent to CONUS and not allowed to return to Diego Garcia. His personal Doctor in CONUS certified his medical suitability to return to Diego Garcia.

We got into an extensive back-and-forth with the Diego Garcia contracts office and later the senior Medical Officer on island. We forwarded Bob's personal doctor certification that Bob was medically cleared to return to Diego Garcia, set up interviews between the Diego Garcia senior Medical Officer and Bob's doctor, and sent our strong requests for Bob to return to the island in November/December 2015. In the end, the Diego Garcia contracting officer sent a letter that stated in the Diego Garcia senior Medical Officer's professional opinion that there was insufficient facilities and services on Diego Garcia to handle the reasonably anticipated risks associated with Bob's conditions and combined with the significant probability of reoccurrence and mortality based on his conditions presented an unacceptable risk of occurrence and our request for Bob's return to Diego Garcia was denied.

Based on the Diego Garcia Contracting Officer's direction and the inability of our LLC Partner to find meaningful work for Bob, they let him go in early January 2016.

In conclusion, the Bob Westermann that I worked very closely with and observed...was an absolute Superstar, phenomenal inspirational leader, and everything that you said he was. When he left the island, he was 'on fire' and he passionately fought every day from the time he left the island until his release from our LLC partner...to return to Diego Garcia to the PM position. Wayne, regretfully...it has been 2 ½ years since I talked to Bob.

Hope that this helps!

YTM,

Mike

---

**From:** Caloose <caloose@aol.com>
**Sent:** Sunday, June 10, 2018 4:42 PM
**To:** Loose, Mike <Mike.Loose@parsons.com>
**Subject:** Fwd: Hi and Robert Westermann

Sent from my iPad

Begin forwarded message:

## EEOC DECLARATION OF ROBERT E. WESTERMANN, JR

### Charging Party's Contact Information

Robert E. Westermann, Jr.
TEL: (503) 213-0238

ALTERNATE: (Charging Party continues to travel in an attempt to mitigate damages from his wrongful termination)
c/o Dededo Law Office
PO Box 21298
Barrigada, GU 96921-1298
Tel: 671-637-9620/1
Fax: 671-637-9660

DOB: XXXXXXXXXX

EEOC HLO
NOV 29 2019
RECEIVED

### Respondent Information:

DSZP 21 LLC
Address: PO Box GH
Hagatna, GU 96932
(671) 339-3924 / 3926

### RESPONDENT'S CONTACT INFORMATION:

LeeAnn Bautista, Human Resources
Wayne L. Cornell, President and CEO
Address: PO Box GH
Hagatna, GU 96932
Telephone: (671) 339-3977

NUMBER OF EMPLOYEES: More than fifty (50)
EARLIEST DATE OF VIOLATION: June 7, 2019
LATEST DATE OF VIOLATION: pending

### STATEMENT:

The Charging Party (hereinafter "CP") was contracted for hire by Respondent on October 2, 2018 until his termination on June 7, 2019, and was employed as Operations Manager.

Prior to and including the date of termination above, as witnessed by several coworkers identified below and captured on email correspondence, CP was subjected to direct discrimination based on disability, after being hired with specific knowledge and reasonable accommodation of such disability, incorporated into Charging Party's employment agreement, and then after demonstrating successful job performance, as reflected in regular documented performance evaluations, being labeled explicitly by CP's supervisor, Mr. Cornell, who is President and CEO of the subject company, as a "medical liability" on June 6, 2019, prior to being terminated. This communication was explicitly identified and preserved and reported on the reverse of the notice of termination given the complainant, notwithstanding the performance evaluations of the complainant stated that complainant's job performance "far exceeded" standards, the highest rating possible.

Mr. Cornell also generated pretextual allegations of violations of work rules, for which the timecard evidence submitted herewith demonstrates that there was no violation of the rules cited, and for which no other similarly situated employees were ever subjected to any discipline whatsoever, progressive or otherwise, and such employees identified herein lin fact remained or remain in their positions employed by the Respondent. (see list below).

Notwithstanding Charging Party's wrongful termination, the respondent as Employer further failed to advise or extend to Charging Party any requested benefit of a progressive discipline procedure, nor the respondent's existing grievance or internal administrative appeal procedures.

When Charging Party complained about this unfair treatment treatment, Charging Party's supervisor Cornell explicitly threatened to retaliate against Charging Party, by stating that he would use "Finance, MIS and HR to go through all [charging party's] files" and " dig up all the dirt". Charging Party was thereupon terminated on grounds of his protected disability, without due process, i.e. without following existing progressive discipline nor internal administrative grievance or appeal procedures, and inconsistent with existing past practice for other similarly situated employees.

Moreover, Mr. Cornell persisted after terminating the Charging Party in threatening Charging Party to release all medical records and further information to the Respondent, after Charging Party had already been terminated.

Based on the above facts, the Charging Party was wrongfully terminated, and damaged in the form of lost present and future compensation, and lost opportunities for experience and training leading to further qualification for future career advancement, and retaliated against for his legitimate complaints.

Charging Party wants to proceed with this charge filed with the EEOC. Charging Party will advise the agency of any change of address or telephone number, and will cooperate fully with them in the processing of this charge in accordance with procedures.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

5 November 2019 [signature]

Date Signature